Michael J. Watton, Esq.
Utah Bar No. 15806
**WATTON LAW GROUP**
311 South State Street
Suite 280
Salt Lake City, Utah 84111
Tel. (801) 363-0130
mwatton@wattongroup.com

Jason P. Sultzer, Esq.*
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
sultzerj@thesultzerlawgroup.com
*Admitted Pro Hac Vice

Michael A. Tompkins, Esq.*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
*Admitted Pro Hac Vice

Edward W. Ciolko, Esq.
**CARSON LYNCH**
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
Tel. 267-930-1600
ECiolko@carlsonlynch.com
* Admitted Pro Hac Vice

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROSCOE EVANS, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY, a Utah corporation,<br><br>Defendant. | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM**<br><br>Case No. 1:20-cv-00100-TS-CMR<br><br>Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

Pursuant to Federal Rules of Civil Procedure 23, Plaintiff Evans respectfully requests that this Court issue a Certification Order under Rule 23, Fed. R. Civ. P. (i) certifying the claims in this action as a class action; (ii) confirming Plaintiff as class representative; (iii) appointing Plaintiff's counsel Watton Law Group, Leeds Brown Law, P.C., the Sultzer Law Group, P.C. and

1

Carson Lynch, as Class Counsel; and, (iv) ordering the parties' counsel to meet and confer to develop appropriate notice to Class members. Plaintiff seeks certification of the following class:

> All persons who paid tuition and/or the Mandatory Fees to attend in-person class(es) during the Winter 2020 term/semester affected by COVID-19 at BYU and had their class(es) moved to online only learning (the "Class").

As set forth in greater detail below, the Court should grant Plaintiff's motion and certify the proposed Class because every member suffered the same harm when Brigham Young University ("BYU" or "Defendant") breached identical contractual obligations to each of member of the proposed Class on the same date. This level of uniformity makes this case especially well-suited for resolution as a class action under Rule 23. In support of this motion, Plaintiff submits that all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(2) and/orRule 23(b)(3) have been met. A discussion of each of the class certification prerequisites, and how they are met in this case, is set forth in this Motion and Memorandum filed in support thereof, the Declaration of attorney Michael J. Watton, all attached exhibits[1], as well as all pleadings and records on file and any such other evidence as may be presented at the time of the hearing.

## MEMORANDUM IN SUPPORT

This Memorandum is submitted in support of Plaintiff's Motion for Class Certification.

### I.   NATURE OF THE CASE

Plaintiff's action arises out of BYU's decision at the end of the semester to retain the full amount of tuition and full amount of fees, despite being unable to provide students, like Plaintiff, with the in-person and on-campus educational services that they agreed to, contracted for, and

---

[1] All exhibits are attached to the Declaration of Michael J. Watton ("Watton Dec.") and referred to as "Ex. [Letter]" herein or as otherwise defined.

paid for. *See* Dkt. 35, Amended Complaint ("Am. Compl.")[2]. Prior to the beginning of each term or semester, Plaintiff paid the full price of tuition to attend BYU, as well as the full price in related fees. Am. Compl. at ¶ 10. As alleged, he made these payments in advance of and in exchange for in-person and on-campus educational services, experiences, and opportunities as detailed in Defendant's marketing, advertisements, and other public representations. *See e.g.*, Am. Compl. ¶¶ 12, 20. In response to the COVID-19 pandemic, BYU canceled all in-person and on-campus educational services then transitioned to online only education. Therefore, Plaintiff and the Class did not receive the benefit and services that they bargained for when they paid BYU tuition and various fees. Accordingly, Plaintiff properly asserts claims for breach of contract and unjust enrichment. This Court's earlier decision and order of January 7, 2021, denying Defendant's Motion To Dismiss confirms the same. *See* Dkt. 31. The question today is whether the 30,000 or so students who bear the same loss as Plaintiff should be allowed to prosecute their claim in a class setting – under identical legal and factual questions.

Therefore, there are two foundational issues at the center of this litigation that relate to the entire proposed class. First, did BYU breach its contractual obligations to students like Plaintiff Roscoe Evans ("Evans" or "Plaintiff") when BYU closed its campus and moved all educational services to an online-only instruction model in reaction to the COVID-19 pandemic? Second, if BYU did not breach any contractual obligations to students like Plaintiff, was BYU nonetheless unjustly enriched by retaining all of their tuition and mandatory fee payments while providing a materially different form of instruction and no on-campus or in-person services or facilities? As answering those two straightforward questions will ultimately resolve Plaintiff and the entire proposed Class's claims, this matter is ideally suited to be litigated as a class action.

---

[2] All documents filed via ECF in this matter are referred to as "Dkt. [Number]" or as otherwise defined.

3

## II.     STANDARD FOR CLASS CERTIFICATION

In determining whether Plaintiff's proposed class should be certified, courts will look to see whether all four requirements of Rule 23(a) have been satisfied along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true, and does not examine the merits of the case." *Blackie v. Barrack*, 524 F.2d 891, 900- 901 n.16 and 17 (9th Cir. 1975).

In the only known college refund case that has proceeded to the class certification stage, the Ohio Court of Claims certified the class action and held, "Where [the named plaintiff], as well as those similarly situated, are entitled to remediation for tuition … and fees are questions of law or fact common to [class representative] and those similarly situated, and, in the Court's view, [the class representative]'s claims relate to remediation for tuition … and fees are typical of the claims of the proposed classes. The Court therefore finds that there are questions of law or fact common to members of the proposed classes …" *Cross v. Univ. of Toledo*, 2021 Ohio Misc. LEXIS 43, *10-11 (Ohio Ct. Claims, April 26, 2021) (granting certification on behalf of a tuition class, a room and board class, and a fee class).

### III. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF 23(A)

#### A. RULE 23(A)(1) – NUMEROSITY

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Trevizo*, 455 F.3d at 1162 (internal quotation omitted). *See also, Miller v. Basic Research, LLC.*, 285 F.R.D. 647, 653 (D. Utah 2010). There is "no set formula to determine if the class is so numerous that it should be certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Instead, this is a fact-specific inquiry, and the district court has wide discretion in making this determination." *Trevizo*, 455 F.3d at 1162. "When the class is large, numbers alone are dispositive. . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill 1986). Circuit Courts have allowed classes to proceed with a few as 18 persons. *See Cypress v. Newport News General and Nonsector Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967).

Here, the proposed class is so numerous that joinder of all members in impracticable. The proposed Class is defined as:

> All persons who paid tuition and/or the Mandatory Fees to attend in-person class(es) during the Winter 2020 semester affected by Covid-19 at BYU and had their class(es) moved to online learning.

*See* Am Compl. ¶ 38. Plaintiff further alleges that BYU "has reported that an aggregate of 33,000 or more undergraduate and graduate students were enrolled for the 2019-2020 school year." Am. Compl. at ¶ 41. Further, Defendant cannot contest that more than 40 students were enrolled at the Provo, Utah campus location during the Winter 2020 Term and those individuals paid tuition and fees. Accordingly, there are clearly enough class members to satisfy the numerosity requirement of FRCP Rule 23(a)(1).

### B. RULE 23(A)(2) – COMMONALITY

Rule 23(a)(2) requires that there be a common question of law or fact. Furthermore, "'[a] finding of commonality requires only a single question of law or fact common to the entire class.'" *Miller v. Basic Research LLC*, 285 F.R.D. 647, 654 (D. Utah 2010)(internal cites omitted). "Commonality exists when plaintiffs share a 'common contention. . . that is capable of classwide resolution – which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims on one stroke." *Morrison v. Clear Mgmt. Sols.*, No. 1:17-cv-51, 2019 U.S. Dist. LEXIS 3070, at *4 (D. Utah Jan. 2019) (Citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *Redmond v. Bigelow*, 2014 U.S. Dist. LEXIS 83694 at *11 (D. Utah 2014). The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions significantly predominate over questions that may affect only individual members of the Class because BYU has acted on grounds generally applicable to the classes. The Amended Complaint alleges common legal or factual questions (Am. Compl. at ¶ 42) which include, but are not limited to:

> a. Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by Covid-19;
>
> b. Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;
>
> c. Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    d. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

    e. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    f. Whether it is unjust for BYU to keep funds it collected in advance for services it ultimately did not render; and

    g. The amount of damages and other relief to be awarded to Plaintiff and the Class members.

Given that the common questions of law and fact are "capable of classwide resolution," the commonality requirement of Rule 23(a)(2) is easily satisfied. *See Walmart v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

 C. **RULE 23(A)(3) – TYPICALITY**

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. To satisfy the typicality requirement, the named plaintiffs must show that they "possess the same interests and suffered the same injuries as the proposed members." *Redmond v. Bigelow*, 2014 U.S. Dist. LEXIS 83694 83694, *13 (D. Utah, June 18, 2014) (J. Kimball), (*quoting Swisher v. United States*, 189 F.R.D. 638, 640 (D. Kan. 1999)). "The named plaintiffs' claims need not be identical to those of the other class members, but 'must resemble the class's claims to an extent that adequate representation can be expected." *Id.* In the instant action, Plaintiff and the other Class members each contracted with Defendant for in-person, on-campus instruction, educational services, and use of facilities in exchange for Plaintiff and the Class's tuition and Mandatory Fee payments. The University stopped providing the in-person, on-campus instruction, educational services, and use of facilities to Plaintiff and each member of the Class in mid-March of 2020. As Plaintiff testified, Plaintiff and the other members of the Class

7

received a formal offer of admission via his Acceptance Letter and received other documents from BYU that made specific representations about what Plaintiff and the Class would receive in exchange for their tuition and Mandatory Fees. *See* Deposition Transcript of Roscoe Evans ("Evans Dep.")[3], Ex. D, pg. 32 (referring to his Acceptance Letter: "You know, in my mind, the BYU community is the campus, the people. And then right after that, it says, 'It is a great pleasure to welcome you to our campus to pursue your educational goals.['] So that definitely put the expectation in my mind, you know, in-person, on-campus education."). Thereafter, Plaintiff (i) enrolled as an on-campus student at BYU, (ii) registered for classes and complied with the school's policies and procedures to remain in good standing, and (iii) paid his tuition and Mandatory Fees for on-campus, in-person instruction, educational services, and use of campus facilities. Plaintiff further testified that he and other Class Members were denied the on-campus, in-person educational services, including access to the campus, access to the in-person community, and use of campus facilities that BYU promised to provide, after it closed all of its facilities and switched to fully remote online learning. *See* Ex D., Evans Dep., pg. 86 ("The cost itself is kind of arbitrary because, you know, I paid X amount of money thinking I was going to get one thing and then all of a sudden that all changes."); see also *id.* at pp. 30, 32, 41, 65, 67, 84).

### D. RULE 23(A)(4) – ADEQUACY OF REPRESENTATION

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." In the Tenth Circuit, adequacy of representation depends on the resolution of two questions. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). These two questions are: "'(1) do the named plaintiffs and their counsel have any

---

[3] All deposition transcripts are attached to the Declaration of Michael Watton, Esq. and are labeled as "Ex. [Letter], [Last Name] Dep. [page number]."

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *id*. At 1187-88 (internal citation omitted). *See also M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1303 (D. Utah 2003).

Plaintiff clearly understands his responsibility as a class representative. *See* Ex. D Evans Dep., pg. 36. As the record demonstrates, Plaintiff has spent numerous hours consulting with class counsel, responding to Defendants' discovery requests and sitting for a deposition. Throughout the deposition, Plaintiff answered questions regarding his experiences at BYU as well as the claims alleged in the Complaint. Plaintiff's testimony makes it abundantly clear that he understands the claims asserted on behalf of himself and the class he seeks to represent. In addition, Plaintiff is represented by experienced counsel whose have decades of experience prosecuting cases on behalf of class members. *See infra*, Section V.

The second relevant consideration under Rule 23(a)(4) is whether the Named Plaintiff's claims and interests in obtaining relief conflict with those of the class generally such that Plaintiff will vigorously prosecute the case. Plaintiff Roscoe Evans was an undergraduate student during the Winter 2020 semester with an expected graduation date of April 2021. BYU charged Plaintiff and the Class approximately the same amount[4] in tuition and Mandatory Fees for both the Winter 2020 Semester, approximately $2,750 in tuition and fees per semester. *See* Ex. C, Evans BYU0001 (reflecting all charges and payments between Plaintiff Evans and BYU for Winter 2020). Plaintiffs seeks, for himself on behalf of the Class, the return of a portion of its tuition and Mandatory Fees prorated for the portions of the Winter 2020 when the University

---

[4] Historically, there are two tiers of tuition and fee payments at BYU: (1) students that are members of the Church of Jesus Christ of Latter-day Saints, and (2) unaffiliated students. *See* http://finserve.byu.edu/students-partents/tuition-fees-deadlines (last accessed on Aug. 8, 2021). BYU represents that, "BYU is a non-profit corporation affiliated with the Church of Jesus Christ of Latter-day Saints, and significant portions of university operating costs are paid with the tithes of Church members. In recognition of this support, Church members are assessed lower tuition fees than those who are not members." *Id*.

closed all campus-based services and provided exclusively online-only learning. Given the identical nature of the claims between Plaintiff Evans and the class members, there is no potential for conflicting interests of the named plaintiff and those of the class. Since Plaintiff's interests are exactly the same as the proposed class, there are no conflicts, and Plaintiff will have no problem providing fair and adequate protection for the interests of the class.

Furthermore, Plaintiff's counsel is experienced class counsel who have, and will continue to, vigorously litigate this action on behalf of class members. See, Watton Dec. Para. 2 and specifically Exs. G, H, I and S. Thus, the adequacy of counsel is established. Further, Plaintiff Evans has retained his own counsel to assist Class Counsel in this litigation, Anderson & Karrenberg. *Id.*

Therefore, Plaintiff has satisfied the representation requirement of Rule 23(a)(4).

## IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF 23(b)(3)

Under Rule 23(b)(3) a class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. 23(b). Rule 23(b)(3) also sets forth factors for courts to consider in evaluating predominance and superiority. These factors are: A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

To be certified under Rule 23, Plaintiffs' claims must "depend on a common contention" the validity of which is "capable of class-wide resolution – which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). The requirements of (b)(3) of Rule 23 are commonly referred to as predominance and superiority. *See e.g. Edwards v. First American Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) ("under subsection (b)(3), they must demonstrate the superiority of maintaining a class action and show 'that the questions of law or fact common to class members predominate over any questions affecting only individual members'").

### A. PREDOMINANCE

The predominance standard is akin to the commonality required by Rule 23(a)(2). The difference is that the common issue necessary to satisfy Rule 23(a)(2) must also be found to be the predominant issue in the case. The predominance prong "asks whether the common, aggregation-enabling, issue in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CDC Holding Co., Ltd Liab. Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citation omitted); *see also Amchem Prods., Inc. v Windsor*, 521 U.S. 591, 622-23 (1997) ("[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")

Here, the common issues that exist in this case – whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person, on-campus instruction, educational services, and use of facilities after March 13, 2020— clearly predominates over any individual issues that may exist. Moreover, there is a clear "common nucleus of operative fact," namely, that all class members were subject to the same standardized documents and representations by Defendant throughout the application, acceptance, enrollment, registration, and payment processes. Further, the contractual

11

arrangements between each of BYU's students and the University—receiving in-person, on-campus instruction, educational services, and use of facilities—are effectively identical. Similarly, the nature of Defendants' breach is exactly the same for each member of the Class, regardless of his or her academic major, scholarships, or any other ancillary criteria – the University failed to provide any in-person, on-campus instruction, educational services, or use of campus facilities AND the University elected to maintain the full amount of tuition and fees despite its breaches. Similarly, Defendants' excuse for the breach remains identical in that it relates to the COVID-19 pandemic.

Cases dealing with standardized documents and practices are generally appropriate for resolution by class action because the documents are the focal point of the analysis. *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 543 (N.D. Cal. 2005) ("Class actions are generally appropriate where standardized documents are at issue."). *See also Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is an error to be made, let it be in favor and not against the maintenance of a class action.").

Here, there are several standardized policies that affected all class members, which make this case ripe for class certification, including, but not limited to:

- All students entered into standardized contractual arrangements to enroll as BYU students after filling out the same application for admission to BYU and receiving similar, if not identical, documents from the University. See Ex. K at 98:12-99:5 (BYU decides on applicants to accept by sending an email with a link. Students then accept the offer or deny.) See also, Ex. A and Ex. B at 2 and 9; Ex. T (reflecting BYU's standardized application materials); and, Dkt. 21-1 at exhibit A.

- All students were bound by the University's policies and procedures to remain in good standing. *See* Exhibit K at 111:21–112:20; Ex. P (the standardized honor code for all BYU students).

- All students registered for classes and selected campus-based classes at the Provo, Utah campus location. *See* Ex. O, Ex. M at 67:14-16. Ex. M at 68:24-69:1; *see also* https://catalog.byu.edu/about-byu/catalog-archives. (reflecting standardized course catalogs including 2019-2020 terms).

- All students signed the same agreement governing their failure to pay tuition and fees and to comply with the University's enforcement mechanisms. *See* Exhibit B and Ex. C; Ex. K at 143:1-144:20; Ex. Q (reflecting the standardized financial responsibility declaration regarding tuition and fee payments that applied to all students).

- All students agreed to receive educational services from the University. Ex. K at 113:15-19, 114:6-19.

- All students received online-only educational services beginning on March 13, 2020. Ex. K at 130:11-25.

- BYU's standardized COVID response was that students would not receive refunds for tuition and fees, absent extraordinary circumstances. Ex. F; *see also*, Ex. N. BYU considered tuition/fee cuts across the board. It is this decision and rejection of tuition/fee cuts that this proposed class action is about and that decision applies to every class member. Exhibit K at pp. 14-25; and Ex. R.

BYU retained the full amount of tuition and full amount of fees paid by each class member. Ex. F; Ex R; BYU collected over $95.8 million in tuition for winter 2020. Ex. K at

13

146:17-20. Non-systematic reductions for non-withdrawing students included music classes and were virtually zero. Ex. K at 146-149. Therefore, the essential factual predicates for all class members are virtually the same – if not identical.

Predominance is further satisfied here because Plaintiff seeks the same damages for himself and on behalf of all class members, namely, a prorated amount of tuition and fees Plaintiff and students like Plaintiff paid for the online-only, off-campus portion of the semesters, adjusted for the limited services Plaintiff and students like Plaintiff received.. *See Bergeron v. Rochester Inst. of Tech.*, 2020 U.S. Dist. LEXIS 241125 (W.D.N.Y. Dec. 18, 2020) (finding damages "formulation sufficiently specific" based on the allegations of the operative complaint). Here, Plaintiff has detailed his methodology for calculating damages via a few key data points.

The BYU Winter 2020 semester began on January 6, 2020 and was scheduled to end on April 15, 2020, for a term length of 101 days. However, on March 12, 2020, BYU cancelled in-person instruction for the remainder of the term, with classes transitioning to remote instruction on March 18, 2020. Therefore, Plaintiff Evans, along with the rest of the students enrolled at BYU for the Winter 2020 term, lost 35 total days of in-person instruction and on-campus services and activities, or 35% of the semester. Based on Plaintiff's loss of access to in-person instruction and on-campus resources and activities for 35% of the Winter 2020 semester, the damages Plaintiff seeks includes the market value for the 35% of the Winter 2020 semester during which there was no-person instruction and Plaintiff was unable to access campus facilities and services. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175-76 (2d Cir. 2000) ("General damages are sometimes called 'market' damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach."); *Trans-Western Petroleum, Inc. v. United States Gypsum Co.*,

14

2016 UT 27 (Utah Sup. Ct., June 16, 2016) ("general damages for a breach of contract … are measured by 'the market value of the very thing promised, at the time of performance…"); *Deem v. Baron*, 2020 U.S. Dist. LEXIS 4730 (D. Utah Jan. 10, 2020) (discussing damages under Utah contract law). At the appropriate time, Plaintiff's damages expert will provide a detailed set of computations setting forth Plaintiff and the proposed Class's damages after the completion of all fact discovery. At this stage, however, it should be noted that, in the context of class certification, Plaintiff's market damages with respect to tuition and mandatory fees can be, at least in part, approximated by comparing the tuition and fees Plaintiff paid with the lower tuition and fees charged to students in BYU's online-only education program, known as "BYU Pathways."

### B. SUPERIORITY

As this Court has set forth in *Banks v. Cent. Refrigerated Servs.*, the factors relevant to assessing superiority are:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

*Banks v. Cent. Refrigerated Servs.*, 2017 U.S. Dist. LEXIS 67423 at *29-30 (D. Utah, May 2, 2017) (J. Kimball).

All of these need not be fulfilled to satisfy Rule 23(b); in fact, "only one of Rule 23(b)'s subdivisions must be satisfied to meet the class-action requirements." *Gonzales v. City of Albuquerque*, 2010 U.S. Dist. LEXIS 98271, 2010 WL 4053947, at *11 (D. New Mexico, Aug. 21, 2010) (citing *Carpenter v. Boeing, Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) (stating that the district court must determine whether a suit "falls within one of the categories of actions maintainable as class actions")).The present case easily satisfies the superiority requirement of

Rule 23(b)(3). Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Gete v. INS*, 121 F.3d 285 (9th Cir. 1997). The Court is required to determine the best available method for resolving the controversy and must "consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999). It is proper for the court, in deciding the "best" available method, to consider the "the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual class member. As set forth in Plaintiff's Complaint, there are over 33,000 students enrolled at BYU. It is clear that litigating this action as a class action is more practical and efficient than to litigate 33,000 individual cases for amounts that would simply not justify lengthy and complex prosecutions. In addition, Plaintiff is unaware of any other action or controversy commenced that is seeking the same relief on behalf of the same class. Moreover, there is absolutely no reason why it would be undesirable to concentrate this action before this Court. BYU is headquartered in this District. Lastly, there are absolutely no difficulties likely to be encountered in the management of a class action because it involves straightforward claims for breach of contract and unjust enrichment.

## V. THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES AND THEIR COUNSEL AS CLASS COUNSEL

Pursuant to Rule 23(g), Plaintiffs request his counsel be appointed to represent the Class and be identified as "Class Counsel." Further, Plaintiff Evans will maintain his personal counsel of Anderson & Karrenberg and be identified as "Counsel to Named Plaintiff." Under Rule

23(g)(1), courts must appoint class counsel. The factors courts must consider in making this appointment are identified and detailed below.

(i)     Factor 1: The work counsel has done in identifying or investigating potential claims in the action.

Proposed Class Counsel has thoroughly investigated the claims at issue, has investigated the composition of the class, and has filed a complaint that survived Defendant's initial legal challenge on the Motion to Dismiss. *See* Dkt. 31 (denying Defendant's motion to dismiss); Dkt. 35 (amending the operative complaint). Class Counsel has identified potential publicly available records and documents that form part of the student-university contractual arrangement to highlight in the pleadings and have begun part of the merits-based inquiry[5] for the class as a whole.

(ii)    Factor 2: Counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in the action.

Proposed Class Counsel has extensive class action experience as shown by the firm's biographies and resumes, as they are detailed or attached to the Watton Declaration. Additionally, proposed Class Counsel includes counsel Michael Watton, Esq. who has experience in contract and unjust enrichment claims in his 30 years practicing, and Plaintiff Evans personal counsel, Jake Barney, Esq., works for a highly respected firm of Anderson & Karrenberg. Watton Dec. at 2,3 and Ex. G.

(iii)   Factor 3: Counsel's knowledge of the applicable law.

As detailed above, proposed Class Counsel includes experienced counsel from the state

---

[5] This Court bifurcated discovery into class certification issues first, and then merits-based discovery after the Court rendered a decision on class certification. Therefore, only limited discovery has been conducted as to the merits of the claims at issue. The full scope of this inquiry will be addressed in opposition to Defendant's motion for summary judgement, preemptively filed on July 30, 2021. Dkt. 50.

of Utah and counsel with knowledge of the contract and quasi-contract claims asserted here, as well as counsel versed in class action litigation and in the college refund lawsuits that are being litigated across the country. Thus, Plaintiff's counsel's experience is substantial and satisfies the requirements of Rule 23(g). Additionally, the interest of class members will be further protected because Plaintiff Evans has retained respected counsel that will help insure that proposed Class Counsel is putting the interest of class members first.

      (iv)    Factor 4: The resources that counsel will commit to representing the class.

Proposed Class Counsel has and will continue to dedicate substantial resources to the prosecution of this action, including retaining any necessary outside experts and incurring all expenses necessary for the successful prosecution of this action.

## VI.   CONCLUSION

The proposed class meets all the requirements of Rule 23 to be certified as a class.  The class meets the tests for numerosity, commonality, and typicality.  The class representative is adequate and hired attorneys who have significant experience and will vigorously litigate this action on behalf of class members.  Further, in this case virtually all evidence and claims are the same for all class members.  Questions of law and fact predominate over individual questions.  Finally, a class action is superior for the claims raised as opposed to approximately 30,000 individual actions involving the same discovery and evidence.  This class must be certified.

Respectfully submitted this 2nd day of August, 2021.

                                                   **/s/ Michael J. Watton**
Michael J. Watton, Esq. - Utah Bar No. 15806
**WATTON LAW GROUP**
311 South State Street, Suite 280
Salt Lake City, Utah 84111

Tel. (801) 363-0130
mwatton@wattongroup.com

&

**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.*
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel. (516) 873-9550
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
*Admitted Pro Hac Vice

&

**SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.*
sultzerj@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel. (845) 483-7100
*Admitted Pro Hac Vice

&

**CARLSON LYNCH**
Edward C. Ciolko, Esq.*
ECiolko@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel. (267) 930-1600
* Admitted Pro Hac Vice

*Counsel for Plaintiff and the Putative Class*

**Certificate of Service**

I HEREBY CERTIFY that on August 2, 2021, I electronically filed the **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM** with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

/s/ Kaitlyn R. Lenagh, Senior Paralegal