IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSCOE EVANS, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY, a Utah corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br><br>Case No. 1:20-CV-100-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff Roscoe Evans' Motion for Class Certification ("Motion"). For the reasons discussed below, the Court denies the Motion.

I.      BACKGROUND

In response to the Coronavirus Disease 2019 ("COVID-19") pandemic, colleges and universities across the country transitioned from in-person to online instruction beginning in March 2020. This transition resulted in an influx of lawsuits brought by students seeking partial refunds for tuition and fees for their lack of access to in-person classes and on-campus services. Plaintiff filed this putative class action against Defendant Brigham Young University ("BYU") alleging breach of contract and unjust enrichment on behalf of all people who paid tuition and/or fees to attend in-person classes at BYU during the Winter 2020 semester.

BYU is a private university founded in 1875 in Provo, Utah.[1] BYU is owned by The Church of Jesus Christ of Latter-day Saints (the "Church") and is run by its parent-organization the Church Educational System ("CES").[2] Although BYU is sponsored by the Church and guided by its teachings, BYU is a separate legal entity from the Church with its own management structure and board of trustees.[3]

BYU offers several majors to undergraduate and graduate students[4] and provides options to complete majors through in-person and/or online classes.[5] Tuition prices are the same for in-person and online classes.[6] During BYU's Winter 2020 semester, which started on or about January 6, 2020,[7] undergraduate students paid between $2,800 and $5,900 in tuition,[8] and graduate students paid between $430 and $860 per credit hour in tuition.[9]

Plaintiff enrolled in BYU's undergraduate program in Spring 2017 with an expected graduation date in April 2021.[10] During the Winter 2020 semester, Plaintiff paid approximately $2,750 in tuition.[11] Plaintiff asserts that, based on BYU's online marketing materials and other

---

[1] Docket No. 35 ¶ 13.
[2] *Id.*
[3] Docket No. 87 ¶ 1.
[4] Docket No. 35 ¶ 13.
[5] Docket No. 87 ¶ 4.
[6] *Id.* ¶ 5.
[7] Docket No. 35 ¶ 18; Docket No. 56 at 14.
[8] Docket No. 35 ¶ 19.
[9] *Id.*
[10] Docket No. 35 ¶ 10; Docket No. 87 ¶ 2.
[11] Docket No. 35 ¶ 10.

documents,[12] he expected BYU to provide in-person classes and services in exchange for his tuition payments.[13]

On March 6, 2020, then-Utah Governor Gary R. Herbert declared a State of Emergency due to the spread of COVID-19.[14] In response, on March 12, 2020, BYU cancelled classes and announced that starting March 13, 2020, all classes would be conducted online to prevent the spread of COVID-19.[15] Remote instruction continued for the rest of the Winter 2020 semester, which ended on or about April 15, 2020.[16] Plaintiff completed the remainder of the Winter 2020 semester online and graduated from BYU with a bachelor's degree in computer science at the end of the Winter 2021 semester.[17]

On February 19, 2021, Plaintiff filed an amended class action complaint against BYU asserting claims for breach of contract and unjust enrichment.[18] Plaintiff alleges that BYU failed to provide proper tuition and/or fee refunds after it transitioned from in-person to online instruction.[19] Now before the Court is Plaintiff's Motion seeking to certify the following class:

> All persons who paid tuition and/or Mandatory Fees to attend in-person class(es) during the Winter 2020 term/semester affected by COVID-19 at BYU and had their class(es) moved to online learning.[20]

---

[12] *Id.* ¶¶ 27, 55.

[13] *Id.* ¶ 26.

[14] Utah Executive Order No. 2020-1, *Declaring a State of Emergency Due to Infectious Disease COVID-19 Novel Coronavirus*, (Mar. 6, 2020), https://coronavirus-download.utah.gov/Governor/state%20of%20emergency%20COVID-19.pdf (last visited Feb. 28, 2022).

[15] Docket No. 35 ¶ 21; Docket No. 87 ¶ 27.

[16] Docket No. 35 ¶ 18; Docket No. 56 at 14.

[17] Docket No. 87 ¶ 2.

[18] *See* Docket No. 35.

[19] *See id*.

[20] Docket No. 56 at 2.

The Court heard argument on Plaintiff's Motion on February 23, 2022.[21]

## II.  LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[22] A class action allows one or more plaintiffs to file claims on behalf of a larger group as long as the named plaintiff "possess[es] the same interest and suffer[s] the same injury" as the rest of the class.[23] To justify this shift from the usual rule, the party seeking class certification must satisfy all of the elements of Fed. R. Civ. P. 23.

"[T]he court's first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a)."[24]

> Rule 23(a) requires the party seeking [class] certification to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).[25]

If the court finds that Rule 23(a) is satisfied, "it must then examine whether the action falls within one of the three categories of suits set forth in Rule 23(b)."[26] Here, Plaintiff seeks to satisfy Rule 23(b)(3), "which requires the court to find that: (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,'

---

[21] Docket No. 122.

[22] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

[23] *Id.* at 348–49 (internal citations and quotations marks omitted).

[24] *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004) (citing *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988)).

[25] *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (citing Fed. R. Civ. P. 23(a)).

[26] *Shook*, 386 F.3d at 971 (quoting *Adamson*, 855 F.2d at 675).

(predominance); and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (superiority)."[27]

"Rule 23 does not set forth a mere pleading standard."[28] Although the Court has considerable discretion in granting or denying class certification,[29] it must perform a "rigorous analysis" to determine whether the party satisfied all Rule 23 requirements.[30] "[T]he court must accept the substantive allegations of the complaint as true,"[31] but it "need not blindly rely on conclusory allegations which parrot Rule 23."[32] "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . . Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim."[33] However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[34]

---

[27] *Wallace*, 725 F.3d at 1217 (quoting Fed. R. Civ. P. 23(b)).

[28] *Wal-Mart*, 564 U.S. at 350.

[29] *See Shook*, 386 F.3d at 973 (internal citations omitted).

[30] *Wal-Mart*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

[31] *Shook*, 386 F.3d at 968 (internal citations and quotation marks omitted).

[32] *Id*. (internal citations and quotation marks omitted).

[33] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (internal citations and quotation marks omitted).

[34] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

III.   DISCUSSION

Plaintiff argues that he can satisfy all the requirements of Rule 23.[35] In response, BYU argues that Plaintiff's proposed class definition is unworkable and fails to meet Rule 23's commonality, typicality, and predominance requirements.[36]

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."[37] To meet this burden, Plaintiff "must produce some evidence or otherwise establish by some reasonable estimate the number of class members who may be involved."[38] The Tenth Circuit stated that "there must be presented some evidence of established, *ascertainable* numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement."[39] But "the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action."[40]

Although many circuit courts recognize an implicit ascertainability requirement in Rule 23, courts remain split on its scope. In the Third Circuit a class is ascertainable if it can be identified by "objective criteria" and is "administratively feasible."[41] A class is "administratively feasible" where "class members can be identified without extensive and individualized fact-finding or mini-trials."[42] The Seventh Circuit rejected the Third Circuit's "administrative

---

[35] *See generally* Docket No. 56.

[36] *See* Docket No. 87 at 7.

[37] Fed. R. Civ. P. 23(a)(1).

[38] *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978).

[39] *Id*. (emphasis added).

[40] 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (4th ed. 2021).

[41] *Carrera v. Bayer Corp.*, 727 F.3d 300, 305–07 (3d Cir. 2013).

[42] *Id.* at 307 (internal quotation marks and citations omitted).

feasibility" prong as unduly burdensome and stated that the class need only be defined by "objective criteria."[43] To satisfy the Seventh Circuit's standard, a class definition must not be "too vague or subjective, or . . . defined in terms of success on the merits."[44] Several circuits have adopted this standard.[45] The Tenth Circuit has not explicitly adopted either approach.

Here, Plaintiff cannot demonstrate that his proposed class proposed class meets either standard. Plaintiff's proposed class is not identifiable by "objective criteria." Plaintiff's Motion seeks certification of "*all people* who paid tuition and/or fees to attend *in-person class(es)* during the Winter 2020 semester."[46] Although Plaintiff identified 33,000 BYU students enrolled during the Winter 2020 semester,[47] he has not identified any ascertainable number of individuals who paid tuition to attend in-person classes. BYU explains that its records show where tuition was paid by loan, scholarship, or grant, but its records do not reflect whether the student or a third party paid the tuition.[48]

Plaintiff contends that even if a third party paid the tuition, the student should be deemed to be the one who paid since each student is required to sign a financial responsibility declaration[49] committing to pay tuition when registering for classes.[50] Plaintiff states, "[i]t's the

---

[43] *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 657–58 (7th Cir. 2015).

[44] *Id*. at 659–60.

[45] *See In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x. 329, 334 (5th Cir. 2019); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Sandusky Wellness Ctr. v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

[46] Docket No. 56 at 2 (emphasis added).

[47] Docket No. 56 at 16.

[48] Docket No. 87 at 12 (citing Docket No. 91-8 at 2).

[49] Docket No. 91-4 at 4.

[50] Docket No. 114 at 9–10.

student who promises to pay the bill, follow all of the academic, behavioral, and university rules and regulations. And it's the student who receives the educational services benefit of the bargain."[51] But the plain language of the class definition in Plaintiff's Motion includes "all persons who paid tuition and/or fees to attend in-person classes," not all students who signed a financial responsibility declaration. Moreover, nothing in BYU's financial responsibility declaration requires that students pay tuition themselves or attend in-person classes only that they have a responsibility to pay. Plaintiff has not pointed this Court to any other records or alternatives that could objectively identify an ascertainable number of individuals that would be included in the proposed class. Thus, Plaintiff fails to demonstrate that his proposed class can be ascertained by "objective criteria."

On similar grounds, and of greater concern to this Court, is that Plaintiff's proposed class is not "administratively feasible." BYU's financial responsibility declaration form is signed by all students regardless of whether they enrolled in online or in-person classes and regardless of whether they themselves paid their tuition and/or fees. To determine whether a particular individual is a member of the class, the Court would have to individually inquire into all 33,000 BYU students enrolled during the Winter 2020 semester to determine who paid tuition—the student or a third party. If proposed class members did pay their own tuition, then the Court would have to individually inquire whether they made those payments to attend in-person classes.

This situation is similar to *Davoll v. Webb* where the Tenth Circuit affirmed denial of class certification using the Third Circuit's "administratively feasible" prong.[52] In *Davoll*, the

---

[51] *Id.* at 10.

[52] *Davoll v. Webb*, 160 F.R.D. 142 (D. Colo. 1995), *aff'd*, 194 F.3d 1116 (10th Cir. 1999).

proposed class members were a group of police officers alleging disability discrimination against the Denver Police Department. The district court found that the proposed class definition was "untenable" because the Court would have to conduct "individualized inquiries" to determine whether potential class members met the statutory definition of disability to be included in the class.[53] The Tenth Circuit affirmed, ultimately finding that the district court did not abuse its discretion in denying class certification because the proposed class would have required an individualized determination of whether a potential class member fit the class definition, which would have been "administratively infeasible."[54]

Here, determining whether a person paid tuition and/or fees to attend in-person classes would require the Court to individually inquire of every BYU student enrolled during the Winter 2020 semester. Based upon this, the Court concludes that Plaintiff's proposed class definition is unascertainable and class certification is inappropriate in this case. This determination renders the parties' remaining arguments moot.

### IV.   CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Class Certification (Docket No. 56) is DENIED.

DATED this 28th day of February, 2022.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[53] *Id.* at 146.
[54] *Davoll*, 194 F.3d at 1146.